UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Wanda S. Henderson, | ) | C/A No. 6:26-cv-01444-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Easley Police Department, Officer Connor Runser, | ) | |
| Officer Alex Herden, McCall's Towing, City of | ) | |
| Easley, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Wanda S. Henderson ("Plaintiff"),[1] proceeding *pro se*, brings this action against the above-

named Defendants. Pursuant to 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B), D.S.C., the

undersigned United States Magistrate Judge is authorized to review the pleadings for relief and

---

[1] Plaintiff makes numerous references in her documents to the "WSH Network RVOC Living Trust" (the "Trust"). *See, e.g.*, ECF No. 1-5 at 2. Setting aside the issue of whether the Trust described by Plaintiff is a legally cognizable entity, Plaintiff cannot bring any claims on behalf of the Trust as she is a non-attorney proceeding *pro se* in this action. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (explaining that the legal competence of a layman is "clearly too limited to allow him to risk the rights of others"); *see also Murray v. Singhi*, C/A No. 0:09-cv-451-PMD-PJG, 2009 WL 2447987, at *4 (D.S.C. Aug. 7, 2009) ("[B]ecause Plaintiff is not a licensed attorney, it is well established that he does not have standing to bring suit on behalf of other persons or entities."); *Chien v. Commonwealth Biotechnologies, Inc.*, 484 B.R. 659, 666 (E.D. Va. 2012) (explaining that "a trustee cannot represent the 'trust' *pro se*"). "Corporations, trusts, and other artificial entities may appear in this federal court and litigate only through a licensed attorney who is formally admitted to practice and in good standing with this Court." *Nationstar Mortg., LLC v. Brantley*, C/A No. 9:23-cv-2052-BHH-MHC, 2023 WL 8768381, at *4 (D.S.C. Sept. 21, 2023), *R&R adopted by* 2023 WL 7632084 (D.S.C. Nov. 13, 2023). Although Plaintiff is not permitted to represent the Trust, Plaintiff does have the right to bring claims on her own behalf. *See* 28 U.S.C. § 1654. Due to the convoluted nature of Plaintiff's claims, it is difficult to discern whether she is attempting to bring claims on behalf of the Trust. To the extent she is doing so, such claims are subject to dismissal on the basis that Plaintiff has not retained counsel to represent the Trust.

submit findings and recommendations to the District Court.  For the reasons below, this action is subject to summary dismissal.

## **BACKGROUND**

**Procedural History**

This matter, along with case number 8:26-cv-01465-BHH-WSB, both arise out of a miscellaneous action at case number 6:26-mc-00153, which was filed by Plaintiff in February 2026.  Because Plaintiff has filed similar (and sometimes the same) documents in all three cases, the Court will provide a brief summary of the procedural history and the documents filed by Plaintiff in all three cases.

### *Case No. 26-mc-00153*

Plaintiff first initiated a miscellaneous action on February 27, 2026, at case number 6:26-mc-00153-CIV (the "Miscellaneous Case"),[2] for which she paid a reduced filing fee.[3]  *See In Re Henderson*, No. 6:26-mc-00153-CIV (D.S.C.).  The Miscellaneous Case did not have a judge assigned to the matter.  Plaintiff commenced the Miscellaneous Case by filing a document that was captioned as a "Notice of Appearance and Equitable Direct (Regarding Social Security Benefits)."  *Id*., ECF No. 1.  The first page of that document contained the following two notations:

Equity: Not Adversarial; Not Commercial; Not a Submission at Law

---

[2] As will be explained in detail below, Plaintiff's filing of the Miscellaneous Case was not proper.

[3] The filing fee for a miscellaneous case is $52.00 while the filing fee for a civil action is $405.00. Although Plaintiff has not paid the filing fee of $405.00 in the present action, the Court excuses that failure as Plaintiff already paid the miscellaneous case fee of $52.00.  However, Plaintiff is notified that all future actions will be opened as a civil action and Plaintiff will be responsible for paying the full filing fee of $405.00 unless she is able to show that she is indigent and requests leave of the Court to proceed *in forma pauperis*.

> Filed in Chambers – Special Cause – De Novo – Private Trust Equity Record

*Id*. at 1.  Plaintiff adds this same notation to all her filings listed below.

On March 16, 2026, Plaintiff filed a document in the Miscellaneous Case that was captioned as a "Trust Transfer Grant Deed WSH Network RVOC Living TR Transfer of Equitable Interest to Trust Estate Trust No.: RE 940 358 904 US."  *Id*., ECF No. 5.  On March 18, 2026, Plaintiff filed a document in the Miscellaneous Case that was captioned as a "Plea of Release for Settlement and Notice of Subrogation."  *Id*., ECF No. 6.  On March 20, 2026, Plaintiff filed a document in the Miscellaneous Case that was captioned as a "Final Demand for Return of Vehicle and Notice of Criminal Complaint."  *Id*., ECF No. 7.  On March 23, 2026, Plaintiff filed a document in the Miscellaneous Case that was captioned as a "Decree of Trust."  *Id*., ECF No. 8. On April 6, 2026, Plaintiff filed a document in the Miscellaneous Case that was captioned as an "Emergency Request for Assignment of a Judge and Expedited Ruling."  *Id*., ECF No. 9.  Attached to that document was a "Petition for Equitable Order to Produce Evidence."  *Id*.; ECF No. 9-1.  On April 6, 2026, Plaintiff also informed the Clerk of Court that she "wants this transferred to a civil case."  *Id*., ECF No. 10 (Court only entry).

The Clerk determined that the case involved at least two possible causes of action and opened two civil actions as follows.  First, Plaintiff challenges a "towing [that] was effectuated by McCall's Towing" when her vehicle, "a 2002 Lexus RX300, VIN [redacted], bearing Georgia license plate [redacted], was towed from the Panera Bread location at the direction of Officer Connor Runser, E85 of the Easley Police Department" on March 12, 2026.  *Id*., ECF No. 7 at 5. Plaintiff's documents pertaining to the towing incident were filed in the present action, case number 26-cv-1444.  Second, Plaintiff asserts that she is "entitled to old-age insurance benefits

3

under the laws and customs of the United States" in the amount of "$4500.00 per month." *Id.*, ECF No. 1 at 3. Plaintiff's documents pertaining to her claim that she is entitled to Social Security benefits were filed in civil action number 26-cv-01465.

### Case No. 26-cv-01444 – The Towing Incident

On April 6, 2026, the Clerk opened civil action number 26-1444 and filed Plaintiff's document captioned as a "Plea of Release for Settlement and Notice of Subrogation" along with certain other documents filed in the Miscellaneous Case as the Complaint. *See Henderson v. Easley Police Department*, C/A No. 6:26-cv-01444-BHH-WSB (D.S.C.), ECF No. 1. Plaintiff also filed the following documents, which are attached to the Complaint: (1) "Demand to Show Cause for Refusal to Perform the Decree of Trust," ECF No. 1-1; (2) "Surety Bond," ECF No. 1-2; (3) "Notice of Appearance and Equitable Direction," ECF No. 1-3; (4) "Notice of Equitable Standing and Declaration of Supreme Authority," ECF No. 1-4; (5) "Certificate of Trust," ECF No. 1-5; and (6) a "Notice to the Court, ECF No. 1-6. The Court will address these documents, as relevant to the Court's analysis, in the discussion section below.

### Case No. 26-cv-01465 – Social Security Benefits

On April 6, 2026, the Clerk opened civil action number 26-1465 and filed Plaintiff's document captioned as a "Notice of Appearance and Equitable Direction (Regarding Social Security Benefits)" as the Complaint. *See Henderson v. Commissioner of Social Security Administration*, C/A No. 8:26-cv-01465-BHH-WSB (D.S.C.), ECF No. 1. Plaintiff's claims regarding her Social Security benefits will be addressed by a separate Report and Recommendation filed in that action.

**Factual Allegations[4]**

This action pertains to Plaintiff's allegations regarding the towing incident. Plaintiff contends that on March 12, 2026, she was "stopped by emergency lights and detained by Officer Alex Herden." ECF No. 1 at 3. Plaintiff's vehicle, which had a Georgia license plate, "was towed from the Panera Bread location at the direction of Officers Alex Herden and Conner Runser." *Id*. The towing was effectuated by McCall's Towing of Easley, South Carolina. *Id*. According to Plaintiff, "[t]he alleged basis for the towing was stated as 'VIOLATION' and 'REQUESTED BY ROTATION' on the towing record." *Id*. Plaintiff asserts that three Uniform Traffic Tickets were issued requiring Plaintiff to appear in court or post bond. *Id*. Plaintiff contends that she was not afforded any opportunity to be heard prior to the seizure of her vehicle, nor was she provided with any evidence of lawful jurisdiction or authority for said seizure. *Id*. According to Plaintiff, the detention of her person and the seizure of her vehicle constituted a trespass upon her person and property, violation of her rights, and conversion of her private property. *Id*. at 3–4. Plaintiff states that, "[b]y operation of law and equity, a trust arose from the common burden of this detention and seizure" and "[a]ll participants became and are now co-sureties and trustees of said trust, with fiduciary duties owing to me as beneficiary." *Id*. at 4. Plaintiff purports to "tender to all co-sureties and trustees identified herein the sum of $5.00 as full and final settlement of all claims, liabilities, and obligations arising from or related to the detention of my person and the towing of my vehicle on March 12, 2026." *Id*. Plaintiff makes various allegations about the purported "trust" and

---

[4] The Court confines the allegations presented in this case to only those events related to the towing incident. Allegations related to Plaintiff's claim for Social Security benefits will be addressed in case number 26-1446. That said, the Court notes that some of the allegations made by Plaintiff and the documents submitted by her appear in both cases.

5

Defendants' alleged obligations arising from the creation of such "trust." *Id*. at 4–6. Plaintiff demands the return of her vehicle "free and clear of any charges, fees, or conditions." *Id*. at 6.

**Pending State Court Proceedings**

As noted, Plaintiff received three traffic citations arising from the towing incident. The Court takes judicial notice[5] of those pending proceedings in the Easley Municipal Court, for which Plaintiff was ticketed as follows: (1) driving under suspension, license suspended for DUI, 1st offense, at case number 20260791000023; (2) uninsured motor vehicle fee violation, 1st offense, at case number 20260791000038; and (3) operating or permitting operation of vehicle which is not registered and licensed at case number 20260791000039.

<u>**STANDARD OF REVIEW**</u>

**Screening and Liberal Construction**

Because Plaintiff is a *pro se* litigant, her pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir.

---

[5] The Court takes judicial notice of the records in Petitioner's underlying criminal cases in the Spartanburg County Court of General Sessions as well as his appeal. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Court's duty to liberally construe a *pro se* litigant's complaint does not require the Court "to remove [it's] heavy robe . . . and take on the role of the litigant's attorney." *Jackson v. Dameron*, -- F. 4th --, No. 25-6295, 2026 WL 860089, at *7 (4th Cir. Mar. 30, 2026). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Although the Court must liberally construe the *pro se* pleadings and Plaintiff is not required to plead facts sufficient to prove her case as an evidentiary matter in the Complaint, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (explaining a plaintiff may proceed into the litigation process only when his complaint is justified by both law and fact). "A claim has 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388 (4th Cir. 2014).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As noted, although the Court must liberally construe the pro se complaint, a plaintiff must do more than make conclusory statements to state a claim for relief. *See Iqbal*, 556 U.S. at 677; *Twombly*, 550 U.S. at 555. Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. *Iqbal*, 556 U.S. at 678–79; *see also Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994)

7

(explaining that, although the court must liberally construe the pro se complaint, a plaintiff must do more than make mere conclusory statements to state a claim); *White v. White*, 886 F.2d 721, 723–74 (4th Cir. 1989) (dismissing complaint dismissed because it "failed to contain any factual allegations tending to support his bare assertion").  Thus, although a plaintiff is not required to plead facts sufficient to prove his case as an evidentiary matter in the complaint, he must allege facts that support a claim for relief.  *Bass v. DuPont*, 324 F.3d 761, 765 (4th Cir. 2003).

This Court also possesses the inherent authority to review *pro se* pleadings to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleadings are not subject to the prescreening provisions of 28 U.S.C. § 1915.  *See Mallard v. U. S. Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (unpublished) ("[F]rivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid . . . [and] because a court lacks subject matter jurisdiction over an obviously frivolous complaint, dismissal prior to service of process is permitted.") (citations omitted); *see also Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1181 (7th Cir. 1989) ("[A] district court's obligation to review its own jurisdiction is a matter that must be raised *sua sponte*, and it exists independent of the 'defenses' a party might either make or waive under the Federal Rules."); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981) (providing a judge may dismiss an action *sua sponte* for lack of subject matter jurisdiction without issuing a summons or following other procedural requirements).

8

**Claims under 42 U.S.C. § 1983[6]**

The Complaint appears to be filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983).  To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

Plaintiff's filings lack any justiciable basis under federal law, are frivolous, and fail to state any claim upon which relief can be granted by this federal court.  The Court also appears to lack jurisdiction, and Plaintiff's claims are barred by certain abstention doctrines.  Thus, this civil action is subject to summary dismissal.

**Nature of the Action**

The Court must first identify the nature of the action so that it can determine whether jurisdiction exists and whether the allegations state a claim for relief to survive initial review.

---

[6] The Clerk of Court opened the present civil action as asserting claims pursuant to 42 U.S.C. § 1983.  Plaintiff has filed a "Notice" stating that she "never filed a complaint under 42 U.S.C. [§] 1983 or any other at-law statute."  ECF No. 1-7 at 2.  The Court will address Plaintiff's contention below.  Out of an abundance of caution and giving liberal construction to the pleadings submitted by Plaintiff, the Court will address Plaintiff's claims, at least in part, under the standard for § 1983 claims noted herein.

*The Miscellaneous Case*

Plaintiff initially commenced this matter as a miscellaneous action—i.e., the Miscellaneous Case discussed above. After the Clerk opened the present civil action, construing it as an action under § 1983, and transferred Plaintiff's documents to this action from the Miscellaneous Case, Plaintiff filed a "Notice to the Court" stating that she does not consent to the characterization of her action as a civil action under § 1983. ECF No. 1-7 at 2. To support that contention, Plaintiff asserts that she is not seeking any "at-law relief," explaining as follows:

> None of my filings seek any relief available only at law. I have not requested damages, injunctions, declaratory judgments, or any other remedy that requires submission to at-law jurisdiction. My filings are purely in equity: they invoke trust principles, tender, accounting, the court of conscience, and the inherent authority of the beneficiary.

*Id*. at 3. Plaintiff also contends that the "miscellaneous equity filings stand alone," arguing as follows:

> All documents I have filed are in equity. They are lodged in Miscellaneous Docket No. 6:26-mc-00153-CIV and related filings under the same miscellaneous number. These documents include:
>
> - Plea of Release for Settlement and Notice of Subrogation (filed March 18, 2026);
> - Final Demand for Return of Vehicle and Notice of Criminal Complaint (filed March 19, 2026);
> - Decree of the Trus (filed March 23, 2026);
> - Petition for Equitable Order to Produce Evidence (filed April 6, 2026);
> - Emergency Request for Assignment of Judge and Expedited Ruling (filed April 6, 2026).
>
> Each of these documents is clearly marked: "Equity: Not Adversarial; Not Commercial; Not a Submission at Law" and "Filed in Chambers – Special Clause – De Novo – Private Trust Equity Record." The miscellaneous equity filings are not ancillary to any at-law complaint. They stand alone as a private trust proceeding in equity.

10

*Id*. at 3. Finally, Plaintiff concludes that document with a purported "Demand to Show Cause" as follows:

> The court is hereby ordered to show cause within ten (10) days of receipt of this Notice why the docket should not be corrected to reflect that no §1983 complaint was filed by me, and why the miscellaneous equity filings should be recognized as the sole and controlling record in this matter. If the court does not respond within ten (10) days, its silence shall constitute acceptance that no at-law complaint exists and that the equitable proceedings are self-standing.

*Id*. at 4. Based on these assertions, it appears that Plaintiff believes this action should be accepted as a miscellaneous case and not a civil action.

Despite Plaintiff's arguments to the contrary, "this action is 'not a proper miscellaneous case.'" *Pugach v. Bessent*, No. 1:25-mc-417 (GHW,) 2025 WL 2772912, at *1 (S.D.N.Y. Sept. 26, 2025) ("This action is dismissed without prejudice on the ground that it is not a proper miscellaneous case."). Miscellaneous case numbers are normally assigned to a variety of matters filed with the Court which are not considered a civil case but still require resolution through the judicial system. *Collins v. Brangman*, No. 2:26-MC-00086-RMG-MGB, 2026 WL 967973, at *3 (D.S.C. Mar. 20, 2026) ("[M]iscellaneous case numbers are normally assigned to "ancillary and supplementary proceedings not defined as a civil action . . . . Miscellaneous actions require resolution through the judicial system."), *R&R adopted by* 2026 WL 968034 (D.S.C. Apr. 9, 2026). Miscellaneous cases are generally those that contain administrative matters and cannot be considered either a civil or criminal case. *Smith v. Haynes*, C/A No. 3:05-cv-130, 2008 WL 276492, at *1 (N.D.W. Va. Jan. 29, 2008). Instead, they are "ancillary and supplementary proceedings not defined as a civil action." *See* United States District Court for the District of South Carolina, Miscellaneous Cases, http://www.scd.uscourts.gov/Filing/misc.asp (last visited March

11

2, 2026).  Another court has explained as follows in determining whether an action should be classified as a "civil action" or "miscellaneous case":

> The District Clerks' Manual, published by the Administrative Office of the United States Courts, "sets forth the nationwide guidelines for prescribed uses of the miscellaneous docket." *In re Varholy*, No. 3:23-MC-00004 (MEG), 2023 WL 4236044, at *1 (D. Conn. June 28, 2023).  The Manual lists the limited matters where assignment of a miscellaneous case number is proper, including matters where the plaintiff seeks:
>
>> foreign subpoenas, registration of judgment from another district, motion to quash deposition subpoena, motion for protective order, administrative deposition subpoena, application to perpetuate testimony, receiverships, letters rogatory from other districts, warrant for arrest of juror, pen registers, wire interceptions, video interceptions, grand jury matters, internal revenue service third party record keeper actions, and proceedings against sureties.
>
> *Id.* at *2 (citing District Clerks' Manual § 4.03.(a)(1)(ii)-(xvi)).
>
> In addition, a miscellaneous case can be an ancillary proceeding that is directly or indirectly related to a civil or criminal case within the district or another district.  *Id.* § 4.03(a)(1).  "[C]ivil matters are classified as either civil or miscellaneous cases depending on the nature of relief sought in the initiating document."  *Id.* § 302(a).

*Nowak v. Dimon*, C/A No. 25-MC-00515 (JAV), 2026 WL 605006, at *1 (S.D.N.Y. Mar. 3, 2026) (dismissing the action on the ground that it was not a proper miscellaneous case because the plaintiff appeared "to be challenging the validity of a mortgage loan and promissory note entered into with JP Morgan Chase Bank").

In the present action, Plaintiff appears to be challenging the validity of a traffic stop, the towing or seizure of her vehicle, and/or the traffic tickets issued to her.  Because the issues raised by Plaintiff can be addressed in a regular civil action and the relief sought is not any of those listed

above, this action does not qualify as a miscellaneous case. *Pugach*, 2025 WL 2772912, at *1 ("The relief that Plaintiff seeks demonstrates that this action is not one of the limited matters where use of the miscellaneous docket is proper."); *In Re Israel David Jimenez II*, No. 26-MC-16 (JPO), 2026 WL 962592, at *1 (S.D.N.Y. Apr. 9, 2026) (finding the plaintiff could not bring a miscellaneous action where he failed to identify one of "the limited fifteen matters for assignment of miscellaneous case numbers" and instead sought "only to record and preserve the Israel David Jimenez II Ecclesiastical Trust Declaration"). Indeed, the relief sought by Plaintiff—essentially requesting ex parte injunctive or declaratory relief related to a dispute between Plaintiff and the named Defendants pending in the state courts—"is improper . . . in this purported miscellaneous case." *In re Real Prop. Known as 5401 Collins Ave. #828 Miami Beach, Fla.*, No. 25-MC-576 (MKV), 2025 WL 3654060, at *2 (S.D.N.Y. Dec. 17, 2025); *see also Vega v. United States*, No. 24-MC-00262 (MMG), 2024 WL 3013848, at *1 (S.D.N.Y. June 14, 2024) ("The relief that Plaintiff seeks demonstrates that this action is not one of the limited matters where use of the miscellaneous docket is proper.").

Plaintiff's contention that this action is not one at law and instead seeks only equitable relief is without merit. "The Federal Rules famously abolished distinctions between various types of judicial proceedings—like the distinction between 'actions at law' and 'suits in equity'—by announcing that '[t]here shall be one form of action to be known as "civil action."'" *Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) (quoting Fed. R. Civ. P. 2 (1938)); *Blake v. United States*, No. 2:17-CR-00107, 2019 WL 3889648, at *4 (S.D.W. Va. July 22, 2019) (discussing what the term "law and equity" means and noting "the reference to law and equity in Article III of the Constitution refers to an 18th century distinction between actions at law and suits in equity, which today is largely vestigial"), *R&R adopted by* 2019 WL 3884019 (S.D.W. Va. Aug. 15, 2019). "The

13

Federal Rules of Civil Procedure make clear that suits in equity are considered civil actions." *United States v. Bank*, 965 F.3d 287, 297 (4th Cir. 2020); *see also* Fed. R. Civ. P. 2, advisory cmte. n.2 to 1937 amend. ("Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules."). "Because there is only one form of action recognized under the Federal Rules, Plaintiff's claims can only be asserted within a civil action. Plaintiff concedes the "miscellaneous equity filings are not ancillary to any at-law complaint." ECF No. 1-7 at 3. And, as Plaintiff's documents "and the relief sought make clear that [she] seeks to litigate in this action a full-blown 'contested proceeding' . . . on the merits of a dispute about the property that she alleges [was taken from her]," this action is not properly brought as a miscellaneous case. *In re Real Prop. Known as 5401 Collins Ave. #828 Miami Beach, Fla.*, No. 25-MC-576 (MKV), 2025 WL 3654060, at *2 (S.D.N.Y. Dec. 17, 2025).

**No Case or Controversy**

Next, accepting Plaintiff's contention as true that this action is "Not Adversarial; Not Commercial; Not a Submission at Law," *see, e.g.*, ECF No. 1 at 1, would render this action subject to summary dismissal for lack of jurisdiction. Plaintiff repeatedly asserts that this action does not present a live case or controversy or adversarial proceedings and that she is not seeking "at-law relief" such as money damages.[7] *See, e.g.*, ECF Nos. 1 at 1, 11, 13, 22, 31, 36; 1-6 at 3; 1-7 at 3. Accepting these assertions as true, the Court does not have jurisdiction.

> When concerns about our jurisdiction arise, we must zealously ensure that we do not exercise judicial power outside the Constitution's bounds. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). "No action of the parties can confer subject-matter jurisdiction upon a federal court,

---

[7] Despite these assertions, Plaintiff presents contradictory contentions that she is seeking money damages. *See, e.g.*, ECF No. 1 at 26.

and ordinary principles of consent, waiver, and estoppel do not apply." *Id.* (cleaned up). Likewise, Congress cannot extend the judicial power to matters that are neither cases nor controversies. *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). . . .

Under our Constitution, "[t]he judicial power" extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limitation cabins federal courts to "the proper—and properly limited—role of the courts in a democratic society." *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). And it ensures that federal courts only exercise power over "those disputes which are appropriately resolved through the judicial process." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Unlike the "legislative Powers" or the "executive Power," U.S. Const. arts. I & II, our Power "is legitimate only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy between individuals," *Chi. & Grand Trunk Ry. v. Wellman*, 143 U.S. 339, 345, 12 S.Ct. 400, 36 L.Ed. 176 (1892).

A case or controversy's hallmark has long been "the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication." *Muskrat v. United States*, 219 U.S. 346, 357, 31 S.Ct. 250, 55 L.Ed. 246 (1911). That means "there must be an actual controversy, and adverse interests" between the parties. *Lord v. Veazie*, 49 U.S. (8 How.) 251, 255, 12 L.Ed. 1067 (1850). Although adverseness is an abstract concept that defies straightforward definition, typical adverseness is easy enough to describe: It is where one party "asserts its right" and the other party "is resisting." *Old Colony Tr. Co. v. Comm'r*, 279 U.S. 716, 724, 49 S.Ct. 499, 73 L.Ed. 918 (1929). Classic adverseness is the push and pull of parties with opposing interests who offer disagreements to the court.

*Nat'l Lab. Rels. Bd. v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 399–400 (4th

Cir. 2022) (footnotes omitted). If the Court accepts Petitioner's contention that there is no case or

15

controversy and that she does not wish to pursue adversarial proceedings, then this Court does not have jurisdiction.[8]

**Ex Parte Actions in Equity**

Plaintiff appears to argue that this Court has "equitable" jurisdiction to issue some form or ex parte relief. ECF No. 1-7. That contention lacks merit. Courts within the Fourth Circuit have rejected nearly identical claims, finding federal courts lack jurisdiction over such claims. *See, e.g., Rahman v. Chenault*, C/A No. 1:17-cv-MC-13-LMB-IDD-, 2017 WL 5574985, at *1 (E.D. Va. May 16, 2017) (concluding the court lacked jurisdiction over similar case in which the plaintiff requested "an in-camera, private chambers, sealed, Ex Parte hearing with Chancellor"), *aff'd*, 694 F. App'x 143 (4th Cir. 2017). Indeed, courts have rejected such arguments as frivolous and having no basis in the law. *See, e.g.*, *Rodger II of Fam. of Atwood v. Connor*, C/A No. 2:17-cv-01180, 2017 WL 2269005, at *2 (S.D.W. Va. May 4, 2017) (rejecting as frivolous a similar claim seeking a "Petition for Equitable Relief" that sought "a declaration that [the plaintiff's] obligations under the 'judgment deed' are discharged and that he, as a 'surety' is exonerated from further liability"), *R&R adopted by* 2017 WL 2261743 (S.D.W. Va. May 23, 2017).

Plaintiff's assertions that this Court should proceed ex parte in this matter is also without merit. *Martynuska v. BWW L. Grp., LLC*, C/A No. DKC-19-cv-660, 2019 WL 1282072, at *2 (D. Md. Mar. 20, 2019) (rejecting request by the plaintiff for injunctive relief to be granted ex parte to halt foreclosure activity). "It is settled beyond peradventure that, in our system of justice, ex parte

---

[8] The Court should not accept Plaintiff's contentions. This action clearly is adversarial in nature and Plaintiff is asking this Court to interfere with certain pending state court matters and/or to award Plaintiff relief against identified individuals and entities. As such, the Court will assess whether it otherwise has jurisdiction, assuming that there is a live case or controversy.

judicial proceedings . . . are greatly disfavored. The conduct of such proceedings present substantial due process concerns, and our courts are necessarily and properly reluctant to participate in them." *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350, 357 (4th Cir. 2007).

**Jurisdiction**

Setting aside the issues noted above, the Court lacks jurisdiction over this civil action even applying liberal construction to the allegations presented. Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Accordingly, a federal court is required to determine if a valid basis for its jurisdiction exists "and to dismiss the action if no such ground appears." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his pleadings. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir. 1985) ("[P]laintiffs must affirmatively plead the jurisdiction of the federal court."). As such, Federal Rule of Civil Procedure 8(a)(1) requires that a complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]"

Generally, federal district courts have original jurisdiction over two types of cases, referred to as (1) federal question cases, pursuant to 28 U.S.C. § 1331, and (2) diversity cases, pursuant to 28 U.S.C. § 1332. As to cases involving a federal question, § 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

17

treaties of the United States." 28 U.S.C. § 1331. "[F]ederal question jurisdiction exists 'only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint.'" *Burbage v. Richburg*, 417 F. Supp. 2d 746, 749 (D.S.C. 2006) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Diversity jurisdiction, on the other hand, requires (1) complete diversity of the parties and (2) an amount in controversy in excess of $75,000.00. *See* 28 U.S.C. § 1332(a). The parties are completely diverse only if no party on one side is a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978).

### *Federal Question Jurisdiction*

Federal question jurisdiction arises from 28 U.S.C. § 1331, which provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "To determine whether a plaintiff's claims 'arise under' the laws of the United States, courts typically use the 'well-pleaded complaint rule,' which focuses on the allegations of the complaint." *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). "In other words, federal question jurisdiction exists 'only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint.'" *Burbage v. Richburg*, 417 F. Supp. 2d 746, 749 (D.S.C. 2006) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 426 (4th Cir. 2003)).

Plaintiff does not allege facts showing that federal question jurisdiction exists over this action. Plaintiff has not cited any federal statute or constitutional provision from which a federal question can be identified. Plaintiff expressly states that she "never filed a complaint under 42 U.S.C. § 1983 or any other at-law statute." ECF No. 1-7 at 2. Plaintiff asserts that Defendants' conduct constitutes "trespass" and "conversion." ECF No. 1 at 3–4. And Plaintiff presents her

claims in terms of purported equitable trust principals, breaches of fiduciary duties, trespass, and conversion. ECF No. 1 at 15–18. These claims arise under state tort law and not under any federal statute or constitutional provision. Accordingly, federal question jurisdiction does not exist in this case.

### Diversity Jurisdiction

This Court could entertain Plaintiff's state law claims under the diversity statute. However, Plaintiff fails to plead facts showing the diversity statute's requirements are satisfied. The diversity statute requires complete diversity between the parties and an amount in controversy in excess of $75,000.00. *See* 28 U.S.C. § 1332(a); *Anderson v. Caldwell*, No. 3:10-cv-1906-CMC-JRM, 2010 WL 3724752, at *4 (D.S.C. Aug. 18, 2010), *R&R adopted by* 2010 WL 3724671 (D.S.C. Sept. 15, 2010). Complete diversity of the parties means that no party on one side may be a citizen of the same state as any party on the other side. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 (1978). Here, Plaintiff and all Defendants are citizens of South Carolina. ECF No. 1 at 2. Additionally, Plaintiff has not alleged facts showing the amount in controversy is met in this case. Indeed, Plaintiff alleges that she is only seeking equitable relief and has not identified any amount in controversy. Accordingly, the pleadings filed in this action fail to satisfy the requirements of 28 U.S.C. § 1332(a).

Thus, Plaintiff has failed to allege facts to establish that this Court has subject matter jurisdiction over her claims under either federal question or diversity grounds, and, therefore, this civil action should be dismissed for lack of jurisdiction.

### Supplemental Jurisdiction

Plaintiff may also be attempting to allege claims under South Carolina law pursuant to the Court's supplemental jurisdiction. However, as Plaintiff fails to state any federal claim, only her

state law claims would remain, and federal courts may hear and decide state-law claims only in conjunction with federal-law claims, through the exercise of "supplemental jurisdiction."  *See* 28 U.S.C. § 1367; *Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 387 (1998).  Of course, a district court would also have diversity jurisdiction in a civil action "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between – (1) citizens of different States . . . ."  28 U.S.C. § 1332.  However, as discussed above, Plaintiff has not alleged complete diversity of the parties nor established the jurisdictional amount in controversy.  As Plaintiff has asserted no valid federal claim and there is no diversity jurisdiction, this Court should not exercise supplemental jurisdiction over any state law claims.  *See* 28 U.S.C. § 1367; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Tigrett v. Rector and Visitors of the Univ. of Va.*, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case); *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999) ("[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants.").[9]

**Claims Under § 1983**

Plaintiff expressly states that she is not bringing claims under 42 U.S.C. § 1983.  ECF No. 1-7 at 2.  In an effort to give the broadest possible liberal construction to the pleadings, however, the Court will consider whether a plausible § 1983 claim has been established.  Even if Plaintiff had asserted a constitutional claim or some statutory violation under § 1983, all of the named Defendants would be entitled to dismissal for the following reasons.

---

[9] Even if Plaintiff had alleged facts to establish subject matter jurisdiction, this action would be subject to dismissal for the additional reasons provided herein.

The Easley Police Department is subject to dismissal because it is not a "person" subject to suit under § 1983.  It is well settled that inanimate objects such as buildings, facilities, and grounds, as well as police departments, do not qualify as "persons" and cannot act under color of state law.  *See Nelson v. Lexington Cnty. Det. Ctr.*, C/A No. 8:10-2988-JMC, 2011 WL 2066551 (D.S.C. May 26, 2011) (finding that a building, detention center, is not amenable to suit under § 1983); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); *see also Post v. City of Fort Lauderdale*, 750 F. Supp. 1131 (S.D. Fla. 1990) (dismissing city police department as improper defendant in § 1983 action because not a "person" under the statute); *Shelby v. City of Atlanta*, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) (dismissing police department as party defendant because it was merely vehicle through which city government fulfills policing functions).  Similarly, the staff of an organization is not considered a person subject to suit under 42 U.S.C. § 1983, and groups of people may not be sued under § 1983.  *See Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) (finding that the medical department of a prison is not a person pursuant to § 1983).  Therefore, the Easley Police Department should be dismissed for failure to state a claim against it.  *Moore v. Easley City Police Dep't*, C/A No. 8:16-cv-525-MBS, 2016 WL 1444414, at *2 (D.S.C. Apr. 13, 2016) (finding Easley Police Department was not a person subject to suit under § 1983).

The City of Easley on the other hand is considered a person subject to suit pursuant to § 1983.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 689–90 (1978) (finding that municipalities and other local government bodies are "persons" subject to suit pursuant to § 1983).  However, local governmental bodies may be liable only where official policy caused a plaintiff's injury.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011).  "They are not vicariously

liable under § 1983 for their employees' actions." *Id.* Thus, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury. *Id.* Plaintiff makes no allegations against the City of Easley to establish liability for any employee's misconduct, and the City cannot be vicariously liable under § 1983 for any officer's actions. Because Plaintiff has not alleged a policy or custom that caused an alleged injury, he fails to state a claim on which relief may be granted against the City of Easley.

McCall's Towing is entitled to dismissal because it is a private party and not a state actor. Generally speaking, only state actors, not private parties, can be named as defendants under § 1983. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). Private parties can sometimes be treated as state actors where their actions are equivalent to action by the state. *Id.* "Specifically, as to towing companies in similar situations, a plaintiff must demonstrate that the tow operator and towing company agreed or conspired to violate Plaintiff's rights." *Queen v. Dietrich*, C/A No. 1:21-cv-323, 2022 WL 19266405, at *3 (M.D.N.C. July 14, 2022), *R&R adopted by* 2023 WL 2653193 (M.D.N.C. Mar. 27, 2023). As discussed above, the submitted pleadings fail to show that any violation of Plaintiff's rights occurred and contain no facts to allege that McCall's Towing knew of any violation and agreed to participate in it. "Merely towing vehicles at the request of law enforcement officials is not sufficient for liability under § 1983." *Id.* (citations omitted). Therefore, Plaintiff fails to state any claim for relief against these McCall's Towing under § 1983.

Officers Runsser and Herden are entitled to dismissal because Plaintiff fails to allege facts against them showing that they violated any constitutional or statutory right. Plaintiff alleges that they directed that her car be towed and issued traffic tickets. To the extent Plaintiff is alleging a claim for unlawful seizure or malicious prosecution, any such claim is without merit. "When an

22

unreasonable seizure, arrest or prosecution is alleged, such a claim is governed by the Fourth Amendment." *Grant v. Berkeley Cnty. Sheriff's Off.*, C/A No. 2:24-cv-4262-RMG-MHC, 2024 WL 4291416, at \*4 (D.S.C. Sept. 6, 2024), *R&R adopted by* 2024 WL 4286217 (D.S.C. Sept. 25, 2024). The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. To establish a § 1983 claim based on a Fourth Amendment violation for false arrest or false imprisonment, a plaintiff must show that a seizure was effected without probable cause. *See Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014); *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996). Thus, there is no § 1983 claim for false arrest, false imprisonment, or malicious prosecution unless the officer lacked probable cause. *See Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974).

Plaintiff has not alleged facts showing that she (or her vehicle) were seized without probable cause. Additionally, to the extent that Plaintiff's allegations are construed as a claim for malicious prosecution, any such claim also fails. To state a constitutional claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). As to the favorable termination element, the United States Supreme Court recently explained that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Plaintiff has not alleged facts showing that the criminal proceedings (i.e.,

the traffic tickets) ended without a conviction. The traffic tickets of which she complains remain pending. As such, any malicious prosecution claim fails.

For these reasons, Plaintiff has failed to establish a claim for relief under § 1983 against any of the named Defendants that is plausible. Even if she had, the Court should abstain from entertaining any such claims for the reasons below.

**Abstention Doctrines**

Even if the Court had jurisdiction over this matter and the pleadings presented a live case or controversy, the Court would be constrained from granting relief based on abstention principles. Plaintiff purports to bring this action for "equitable" relief and, at bottom, appears to seek the return of her vehicle.

The Anti-Injunction Act (the "Act") precludes such relief. The Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court." 28 U.S.C. § 2283. "An injunction issued against parties to a state court proceeding is, for purposes of the Act, considered an injunction to stay the state court proceeding itself." *In re MI Windows and Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 224 (4th Cir. 2017) (emphasis omitted).

> The Act constitutes "an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (plurality opinion). These three exceptions are injunctions: (1) expressly authorized by statute; (2) necessary to aid the court's jurisdiction; or (3) required to protect or effectuate the court's judgments. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988); *Atlantic Coast Line R.R. Co. v. Bd. of Locomotive Eng'rs*, 398 U.S. 281, 287–88 (1970) . . . . Further, "where the Anti-Injunction Act bars an injunction it 'also bars the issuance of a declaratory judgment that would have the same effect as an injunction.'" *Lovett v. Deutsche Bank Nat'l Trust Co.*, No. 12-1816-MBS-SVH, 2013 WL 841679, at *6 (D.S.C. Feb. 12, 2013) (quoting *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 (4th Cir. 2004) (internal quotation marks and citations omitted)), *adopted*

24

*by*, 2013 WL 841675 (D.S.C. Mar. 6, 2013); *see also Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015) [denying injunctive and declaratory relief regarding the foreclosure of a mortgage and enforceability of the note]; *Liggett v. Fifth Third Mortg.*, C/A 7:16-cv-4011-HMH-JDA, 2017 WL 4083136, at *3 (D.S.C. Aug. 14, 2017), *adopted by*, 2017 WL 4074884 (D.S.C. Sept. 14, 2017).

*Bruce v. Wilmington Sav. Fund Soc'y, FSB, Tr. of Stanwich Mortg. Loan Tr. C*, C/A No. 2:18-cv-2555-BHH-BM, 2019 WL 1293718, at *5 (D.S.C. Jan. 15, 2019), *R&R adopted by* 2019 WL 2281364 (D.S.C. May 29, 2019).  The Supreme Court has stated that, "even if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would."  *Samuels v. Mackell*, 401 U.S. 66, 73 (1971).

Plaintiff appears to seek an order from this Court requiring the return of her vehicle.  *See* ECF No. 1 at 15 ("COMES NOW Wanda Henderson, the living Woman, appearing specially and in propria persona, and files this Final Demand for Return of Vehicle . . .").  However, Plaintiff's request would preempt any actions in the state court concerning the disposition of her vehicle and would have the same effect as a request for an injunction, which would "'result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid.'"  *Hayes v. JP Morgan Chase Bank*, C/A No. 3:13-cv-1884-JFA, 2014 WL 4198897, at *5 (D.S.C. Aug. 20, 2014) (quoting *Samuels*, 401 U.S. at 72).  Because Plaintiff's requested relief would effectively enjoin the state court proceedings that Plaintiff references in her pleadings, the requested relief is barred by the Act.

Additionally, this Court should abstain from considering issues related to the pending state court actions based on the abstention doctrines announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), and *Younger v. Harris*, 401 U.S. 37 (1971).  *Colorado*

25

*River* abstention "allows a district court to abstain where parallel litigation exists in federal and state court and exceptional circumstances warrant abstention." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 740 (4th Cir. 2002). *Younger* provides that a federal court should not interfere with ongoing state criminal proceedings "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). The Supreme Court has extended the *Younger* doctrine to apply in "'noncriminal judicial proceedings when important state interests are involved.'" *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351 (4th Cir. 2005) (quoting *Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). Because the undersigned recommends dismissal of this action for the reasons above, a full analysis of these abstention doctrines is unnecessary. However, courts in this district have routinely abstained in similar actions pursuant to the *Colorado River* and *Younger* abstention doctrines. *See, e.g., Cooper v. Van Slambrook*, C/A No. 2:19-cv-649-DCN-BM, 2019 WL 3777153, at *5 (D.S.C. June 4, 2019), *R&R adopted by* 2019 WL 3778739 (D.S.C. June 25, 2019); *Doherty v. PNC Mortg.*, C/A No. 0:14-cv-4013-TLW-SVH, 2015 WL 5012781, at *5–8 (D.S.C. July 16, 2015), *R&R adopted in part by* 2015 WL 5012823 (D.S.C. Aug. 21, 2015); *Moss v. Hutchens L. Firm, LLC*, C/A No. 8:21-cv-01374-DCC-JDA, 2021 WL 2813737, at *5 (D.S.C. May 19, 2021), *R&R adopted by* 2021 WL 2525472 (D.S.C. June 21, 2021).

**Deprivations of Personal Property**

Additionally, deprivations of personal property do not support actions for damages under § 1983. *See Baker v. Stevenson*, C/A No. 8:13-cv-466-JFA-JDA, 2013 WL 4866337, at *1 (D.S.C. Sept. 11, 2013). This is so because negligence, in general, is not actionable under § 1983. *See Pink v. Lester*, 52 F.3d 73, 75–78 (4th Cir. 1995); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir. 1987). Section 1983 does not impose liability for violations of duties of care arising under

26

state law as "[t]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989). The Fourth Circuit Court of Appeals has held that a random and unauthorized deprivation of personal property by a state official does not rise to a federal due process violation where the state provides post-deprivation procedures to secure the return of the property or to compensate for the loss. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 230–31 (4th Cir. 2008); *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir. 2005). Instead, the availability of a state cause of action for an alleged loss of property provides adequate procedural due process; in other words, where state law provides such a remedy, no federally guaranteed constitutional right is implicated. *See Yates v. Jamison*, 782 F.2d 1182, 1184 (4th Cir. 1986) ("[A] government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful post-deprivation remedy.").

South Carolina law provides post-deprivation procedures to secure the return of personal property or to compensate for the loss. *See, e.g.*, *Drake v. Brown*, C/A No. 6:09-cv-1449-JFA-WMC, 2009 WL 1749375, at *2 (D.S.C. June 22, 2009) (citing *McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (finding South Carolina's post-deprivation remedy under S.C. Code Ann. § 15-69-10, *et seq.* sufficient to satisfy due process requirements)); *see also Mosley v. Scarcella*, C/A No. 1:19-cv-1550-RMG-SVH, 2019 WL 4280129, at *2 (D.S.C. June 19, 2019), *R&R adopted by* 2019 WL 3406612 (D.S.C. July 29, 2019). Further, an unauthorized deprivation of property by a state employee, even if *intentional*, "does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available." *Hammond v. Dean*, No. 3:07-cv-654-SB, 2007 WL 3002362, at *2 (D.S.C. Oct. 9, 2007) (emphasis in original) (citing *Hudson v. Palmer*, 468 U.S.

517 (1984)).  Thus, even if Plaintiff can show that Defendants intentionally took Plaintiff's vehicle, Plaintiff has a remedy under South Carolina law to obtain relief in state court.  *See Hudson*, 468 U.S. at 530–36 (holding that intentional deprivations of property by State employees do not violate due process until and unless the State refuses to provide a suitable post-deprivation remedy); *Mora*, 519 F.3d at 230–31 (finding that the state courts were open to the plaintiff for claims of conversion or trespass to chattels and finding no reason to think that the state process was constitutionally inadequate); *Samuel v. Ozmint*, C/A No. 3:07-cv-178-PMD-JRM, 2008 WL 512736, at *7 (D.S.C. Feb. 25, 2008) (noting that claims related to taking of personal property are cognizable under South Carolina state law); *Greene v. Stonebreaker*, C/A No. 9:06-cv-3392-PMD-GCK, 2007 WL 2288123, at *6 (D.S.C. Aug. 6, 2007) (noting that a person in South Carolina appears to have adequate post-deprivation remedies for personal property loss).  Because Plaintiff can bring an action in the South Carolina state courts to remedy any taking of her property, Plaintiff's § 1983 claim based on any deprivation of her personal property fails to state a claim upon which relief may be granted.  *Davis v. Olivera*, C/A No. 6:25-cv-2756-TMC-WSB, 2025 WL 4663230, at *4–5 (D.S.C. Apr. 4, 2025), *R&R adopted by* 2025 WL 2350464 (D.S.C. Aug. 14, 2025).

**Sovereign Citizen Allegations**

Finally, Plaintiff's claims are also subject to dismissal because they are premised on a frivolous legal theory.  Plaintiff's submitted documents are replete with allegations and assertions espousing the "sovereign citizen" or "redemptionist" argument, which "has been rejected repeatedly by the courts."  *Smith v. United States*, C/A No. 1:12-cv-00900, 2013 WL 5464723, at *1 (S.D.W. Va. Sept. 30, 2013) (internal quotation marks omitted).  Adherents to the sovereign citizen theory "believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior."  *United States v. Ulloa*, 511 F. App'x 105,

106 n.1 (2d Cir. 2013); *see also Presley v. Prodan*, C/A No. 3:12-cv-3511-CMC-JDA, 2013 WL 1342465, at *2 (D.S.C. Mar. 11, 2013) (collecting cases describing the sovereign citizen movement and its common features), *R&R adopted by* 2013 WL 1342539 (D.S.C. Apr. 2, 2013). Federal courts have repeatedly rejected the sovereign citizen theory as baseless. *See, e.g., United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status . . . as a 'sovereign citizen' . . . that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing the "sovereign citizen" theory as having "no conceivable validity in American law"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (explaining the defendant claimed he was "outside" the jurisdiction of the United States; however, the court found this argument to be "completely without merit" and "patently frivolous" and rejected it "without expending any more of this Court's resources on discussion"); *Glover v. South Carolina*, C/A No. 5:16-cv-00969-JMC, 2017 WL 1836982, at *1 n.1 (D.S.C. May 8, 2017), *appeal dismissed*, No. 17-6846, 700 F. App'x 306, 2017 WL 5197454 (4th Cir. Nov. 8, 2017).

Plaintiff's submitted documents are replete with assertions and allegations that bear all the hallmarks of the sovereign citizen theory. For example, Plaintiff identifies herself as "the living woman, appearing in propria persona" and "a living woman, a natural person, endowed with unalienable rights, and am not the ens legis, the fictional entity created by operation of law." ECF No. 1 at 3. Plaintiff has signed many of her submitted documents as "Wanda Henderson, the Living Woman, In Propria Persona." *Id*. at 7. Plaintiff also frequently invokes a "Reservation of Rights" stating "All rights are expressly reserved under UCC 1-208 and all applicable equitable principles . . ." *Id*. at 28. Plaintiff lists her address as "c/o" followed by the street address and places the zip code in brackets. *Id*. Courts have noted that such statements and punctuations

29

appended to a signature indicate "some symbol of [a litigant's] adherence to the sovereign citizens movement." *Thompson v. Warden, N. Cent. Corr. Inst.*, C/A No. 2:24-cv-4224, 2025 WL 1456564, at *2 (S.D. Ohio May 21, 2025) (noting statements such as "all rights reserved without prejudice" have no legal effect under federal law); *Pack v. City of St. Charles*, C/A No. 4:25-cv-0911-MTS, 2025 WL 2899025, at *1 (E.D. Mo. Oct. 10, 2025) (noting the use of "signatures that are distinguished by odd colons, dashes, brackets" or followed by "All Rights Reserved" are indicators of sovereign citizen ideology); *Collins v. Biden*, C/A No. 1:24-cv-01309-JLT-EPG, 2024 WL 4753931, at *4 (E.D. Cal. Nov. 12, 2024) (explaining notations with a signature such as "all rights reserved", "without prejudice", and the like are typically used by persons who consider themselves to be sovereign citizens), *R&R adopted by* 2024 WL 5202455 (E.D. Cal. Dec. 23, 2024).

Courts have also noted, "[i]t is common for sovereign citizens to utilize particular frivolous legal theories, such as claiming to copyright their own names and filing supposed UCC financing statements that exempt them from taxation by becoming a 'secured party' or 'secured creditor.'" *Mack v. Sweet*, C/A No. 4:17-cv-00434-O-BP, 2017 WL 6756667, at *3 (N.D. Tex. Dec. 4, 2017) (collecting cases), *R&R adopted by* 2017 WL 6729630 (N.D. Tex. Dec. 28, 2017); *see also Estrada Tr. v. All Assets Held in 57995-019 / Ismael Estrada*, C/A No. 4:19-cv-2968-MGL-TER, 2019 WL 6330745, at *2 (D.S.C. Oct. 25, 2019) (discussing the plaintiff's use of UCC financing statements to support his sovereign citizen-type arguments and dismissing the plaintiff's claims as frivolous), *R&R adopted by* 2019 WL 6320153 (D.S.C. Nov. 26, 2019), *aff'd*, 811 F. App'x 192 (4th Cir. 2020).

Plaintiff's documents leave no doubt that she premises her claims, at least in part, on redemptionist and sovereign citizen theories, which have been found to be "utterly frivolous" and

"patently ludicrous" claims, using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.*, C/A No. 2:09-cv-40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009); *see also Nunez v. D.T.C.*, C/A No. 4:13-cv-244-TMC, 2013 WL 5409219, at *3 (D.S.C. Sept. 25, 2013) (finding documents and arguments similar to those in the present case to be "frivolous and a waste of court resources"). Because Plaintiff is asserting claims in this case based on the sovereign citizen theory, her claims are subject to summary dismissal as frivolous.

Even if not premised on sovereign citizen arguments, Plaintiff's claims are without merit as they are premised on frivolous theories. For example, Plaintiff has attached to her pleadings a document entitled "Notice of Equitable Standing and Declaration of Supreme Authority" in which she states as follows:

> TO: All persons, entities, agencies, and officers who claim any jurisdiction, authority, or control over the living being, biofield, cells, life, name, or estate of the undersigned.
>
> COMES NOW Wanda Henderson, a living woman, appearing in propria persona and in equity, with clean hands and clean intent. This Notice is issued not by the undersigned alone, but by the authority of the Kingdom of Heaven, the Creator of all life, and the eternal principles of truth, justice, and righteousness.
>
> 1. I challenge any claim of authority over my living being. I demand that any person or entity asserting jurisdiction over me produce the lawful instrument, contract, or delegation that grants such authority. I hold that no such instrument exists.
>
> 2. I declare that my body, my biofield, my cells, and my life are not property of any state, corporation, or agency. They are trust res of the Creator, and I am the steward and beneficiary of that trust.
>
> 3. I give notice that any entity, whether human or otherwise, that trespasses upon my living estate, my name, or my lawful affairs does so without authority. Such trespass is a violation of the highest law, which is the law of the Creator.

31

4. I call upon the conscience of every person who reads this Notice to examine whom they serve. If they serve the adversary, the destroyer of rights and truth, they must cease and desist. If they serve the Creator, they must act in accordance with love, justice, and respect for the sovereignty of every living being.

5. The entities that reside within bodies without the consent of the host are hereby exposed. This Notice serves as a formal demand that such entities depart and that the hosts be restored to their natural, sovereign state.

6. The Kingdom of Heaven does not recognize any authority that is not derived from the Creator. Therefore, any claim of jurisdiction over my person, my affairs, or my property is void ab initio.

7. This Notice is lodged in the court of conscience, which is the highest court in equity. It shall be a matter of public record and notice to all parties, visible to the spiritual and temporal realms alike.

WHEREFORE, I demand that all persons, entities, and agencies cease and desist from any further trespass upon my living estate, my body, my name, or my property. I invoke the full authority of the Kingdom of Heaven to enforce this Notice, and I reserve all rights in equity to seek any remedy necessary to protect the trust res of my being.

All rights reserved. No waiver of any kind is intended.

ECF No. 1-4. Such assertions, do not support any claim or jurisdictional authority for Plaintiff to present her claims in this Court. As such, Plaintiff's claims, regardless of how they are characterized, are subject to dismissal as frivolous.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, it is recommended that the district court **DISMISS** this action for lack of jurisdiction or, in the alternative, on the merits for failing to state a claim, without leave to amend and without issuance and service of process.

**IT IS SO RECOMMENDED**.

s/William S. Brown
United States Magistrate Judge

April 21, 2026
Greenville, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).